FILED
CLERK

2/18/2026 1:23 pm

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
ANTHONY LEONARDI,
                Petitioner,

                                        MEMORANDUM AND ORDER
        -against-                       21-CR-0452(JS)


UNITED STATES OF AMERICA,
                Respondent.
--------------------------------X
APPEARANCES
For Petitioner:     Anthony Leonardi, Pro se
                    #69373-509
                    FCI Danbury
                    FEDERAL CORRECTIONAL INSTITUTION
                    33½ Pembroke Station
                    Route 37
                    Danbury, Connecticut  06811

For Respondent :    Andrew P. Wenzel, Esq.
                    United States Attorney's Office
                    Eastern District of New York
                    610 Federal Plaza
                    Central Islip, New York  11722


SEYBERT, District Judge:

        Presently before the Court is the pro se Section 2255

habeas petition of Anthony Leonardi ("Petitioner" or "Leonardi"),

seeking to vacate, set aside, or correct his sentence (hereafter,

the "Petition").  (See Petition, ECF No. 238.)  The Government

opposes the Petition.[1]  (See Opp'n, ECF No. 239.)  For the following

reasons, the Petition is DENIED in its entirety.

_____

[1]  Although given the opportunity to do so, Petitioner did not file
a reply.  (See Aug. 26, 2024 Elec. Briefing Sch. Order ("The
defendant is directed to file and serve his Reply, if any, to the

I. <u>The Underlying Crimes</u>[2]

Generally speaking, Petitioner was one of the main participants in a bi-costal conspiracy that transported large quantities of controlled substances (hereafter, "Narcotics"[3]) from the West Coast to the East Coast, which were then resold on the East Coast including throughout Suffolk County. Petitioner facilitated every facet of the conspiracy from purchasing, to transporting, to storing, to distributing the Narcotics, in addition to possessing large quantities of cash and firearms, as well as various drug paraphernalia.

On June 27, 2020, local law enforcement executed several search warrants relating to the conspiracy; specifically as to Petition, from the search of his home, police recovered: approximately $50,000 in cash; a loaded assault rifle; a substance commonly used to increase the quantity of heroin; and, other drug

---

Government's Response on or before **11/1/2024**."); <u>see also</u> <u>id.</u> providing notice to parties "that if the Court does not receive any submissions, it will deem the [habeas] motion fully briefed as of the Reply date set forth above"); <u>cf.</u> Case Docket, <u>in toto</u>.)

[2]  The facts are drawn from the Superseding Indictment (<u>see</u> ECF No. 7) and the Presentence Investigation Report ("PSR") (<u>see</u> ECF No. 200 (sealed)), that the Court adopted, as amended, during sentencing. (<u>See</u> Feb. 5, 2024 Min. Entry, ECF No. 215 (sealed); Sent'g Hr'g Tr. (sealed), Ex D, <u>attached to</u> Opp'n.)

[3]  The Narcotics involved included heroin, fentanyl, cocaine, and cocaine base. (<u>See</u> PSR ¶1.)

paraphernalia. That same day, Petitioner was arrested by local authorities, arraigned, and then released on his own recognizance. That did not deter Petitioner's illegal activities.

Notwithstanding a state court order directing Petitioner to abstain from additional criminal conduct, while on bail after his June 2020 arrest, Petitioner continued selling Narcotics. Specifically, after retrieving six kilograms of cocaine and three kilograms of fentanyl, which drugs had been hidden, Petitioner sold a large portion of these recovered Narcotics for approximately $240,000.[4] Throughout the entirety of the conspiracy, Petitioner and his co-conspirators were responsible for the distribution of approximately 15 kilograms of heroin, 30 kilograms of fentanyl, 100 kilograms of cocaine, 181 kilograms of marijuana, and 2.7 kilograms of methamphetamine.

On September 29, 2021, a federal grand jury returned a two-count indictment (the "Indictment") charging Petitioner with conspiracy to distribute Narcotics[5] and using firearms in connection with his Narcotics trafficking.[6] The charges carried a statutory mandatory minimum term of incarceration of 15 years.

---

[4] The proceeds of that sale have never been recovered.

[5] The conspiracy count alleges the violation of 21 U.S.C. §§ 841(b)(1)(A)(i), 841(b)(1)(A)(ii)(II), 841(b)(1)(A)(iii), 841(b)(1)(A)(vi), and 846.

[6] The firearms count alleges the violation of 18 U.S.C. § 924(c)(1)(A)(i).

On October 13, 2021, Petitioner was arrested on these federal charges. He initially entered a plea of not guilty. (See Oct. 13, 2021 Min. Entry, ECF No. 23.)

## II. Petitioner's Guilty Plea

### A. The Plea Agreement

Thirteen months later, on November 14, 2022, Petitioner entered a change of plea. (See Nov. 14, 2022 Min. Entry, ECF No. 145.) His guilty plea was as to Count One, the Narcotics distribution conspiracy count, and pursuant to a plea agreement (hereafter, the "Plea Agreement"). (See Plea Agmt., Ex. A, ECF No. 239-1, attached to Opp'n.) As to that Count, Petitioner agreed that, at his allocution, he would admit "he conspired to sell one kilogram or more of a substance containing heroin, 400 grams or more of a substance containing fentanyl, five kilograms or more of a substance containing cocaine, and 280 grams or more of a substance containing cocaine base." (Id. ¶1.)

In the Plea Agreement, the Government estimated Petitioner's: (1) Criminal History Category was a "III"; and, Offense Level, assuming various acceptances of responsibility reductions, was "35"; this yielded a Guidelines range of 210 to 262 months' imprisonment. Of relevance, the Plea Agreement informed Petitioner the Guidelines estimate was not binding upon the Probation Department or the Court. Petitioner stipulated to the Guidelines estimate. In exchange, the Government agreed to

4

dismiss Count Two, _i.e._, the firearms charge, brought against Petitioner.

    B.   <u>The Plea</u>

        1.  <u>The Standard Plea Form</u>

Before his plea hearing commenced, Petitioner completed a Standard Plea Form, which was signed by Petitioner and his counsel. (<u>See</u> Plea Form, Ex. B, ECF No. 239-2, attached t Opp'n.) Among other things, in it, Petitioner indicated he: (a) was not under the influence of any drugs or alcohol; (b) was of clear mind and understood what was occurring; (c) understood his constitutional rights that he would be waiving by pleading guilty; (d) had discussed with his counsel, <u>inter alia</u>, (i) the Indictment, (ii) the maximum sentence for the Count to which he was pleading, (iii) the Sentencing Guidelines, which were not mandatory, and (iv) the Section 3553(a) sentencing factors the Court would consider in fashioning a sentence; and (v) the binding effect of the Plea Agreement. (<u>See</u> <u>id.</u>) Moreover, Petitioner indicated both his satisfaction with his counsel and his belief that counsel had done a good job. (<u>See</u> <u>id.</u> ¶¶ 44-45.)


[Remainder of page intentionally left blank.]

## 2. The Plea Hearing[7]

At the outset of the plea hearing, the Court determined, _inter alia_, Petitioner: was competent and clear-headed even though he had taken prescribed sleep medication the night before the hearing, which did not affect his ability to understand the proceeding; understood that he had an absolute right to go to trial; understood that, at trial, it would be the Government's burden to prove Petitioner's guilt beyond a reasonable doubt; and understood that if he pled guilty, Petitioner would be waiving his constitutional right to trial, as well as other rights. (Plea Hr'g Tr. at 3-8.) The Court advised Petitioner that "[a] judgment of guilty will be entered on the basis of your guilty plea, which judgment can never be challenged," although he may "have the right to appeal with respect to [his] sentencing", to which Petitioner affirmed his understanding. (Id. at 8:11-16.) Petitioner also confirmed his familiarity with the Plea Agreement, and that both he and his counsel had signed said Plea Agreement. (Id. at 10:7-11.) It was also confirmed on the record that Petitioner stipulated to the Guideline the Government agreed to

---

[7] Petitioner's change of plea was taken by the Magistrate Judge, who recommended its acceptance. (See Referral Order, ECF No. 143; Consent Order for Plea, ECF No. 144; Nov. 14, 2022 Min. Entry, ECF No. 145; Plea Hr'g Tr., Ex. C, ECF No. 239-3, at 18, attached to Opp'n.)

recommendation of no more than 15 years' incarceration. (See id. at 10:16-19.)

The Court had the Government identify the elements of the crime to which Petitioner would be pleading guilty, and then confirmed with Petitioner both his knowledge of same, as well as that he had discussed said elements and charge with his counsel. (See id. at 10-11.) Then, the Court explained the applicable statutory penalty, i.e., that the "maximum penalty under Count 1 is life plus a fine of $10 million", which Petitioner affirmed he understood. (Id. at 11:23-25.) Continuing, regarding the fashioning of a sufficient sentence, the Court informed Petitioner it would rely upon the advisory Guidelines, and the Section 3553(a) sentencing factors, which factors it delineated. (See id. at 12-13.) Petitioner stated his understanding regarding both of those components of sentencing. (See id. at 12.)

As he indicated in his Standard Plea Form, upon questioning, Petitioner told the Court he was satisfied with his legal representation up until that point and he believed his attorney had done a good job for him. (See id. at 14:3-8.) Moreover, Petitioner acknowledged: he was making his guilty plea voluntarily and of his own free will; no one had forced or threatened him to plead guilty; he had not been promised a particular sentence; he did not have any agreements beyond those contained in the Plea Agreement; and he was pleading guilty because

that was the case. (Id. at 14:12-24.) Additionally, as part of his Plea Agreement, Petitioner agreed he would not appeal or otherwise challenge his conviction or sentence if the Court sentenced him to a term of imprisonment of 293 months or less. (See id. at 9:24-10:2.)

The Court asked Petitioner to explain what made him guilty of the Count One charge; Petitioner allocated to his agreement with others to transport and distribute Narcotics from outside to inside New York State and which he then distributed within Suffolk County. (See id. at 15-16.) Further, Petitioner explicitly agreed with the specific amounts of Narcotics, articulated by the Government, to be part of the charged conspiracy which were attributable to Petitioner. (See id. at 16:17-17:20.) Thereafter, the Court found, in entering a guilty plea, Petitioner made a knowing and voluntary waiver of his rights, and understood the consequences of pleading guilty; it also found a factual basis for Petitioner's plea. (See id. at 19: 23-20:2.) Hence, the Court recommended Petitioner's guilty plea to Count One of the Indictment be accepted. (See id. at 20: 3-5.) On November 28, 2022, the undersigned accepted Petitioner's Plea. (See Order Accepting Guilty Plea, ECF No. 151.)

[Remainder of page intentionally left blank.]

III. Petitioner's Sentencing

    A.   The PSR

        After his plea, the Probation Department (hereafter, "Probation") prepared a PSR regarding Petitioner. While Probation agreed with the Government's estimate that Petitioner was at Criminal History Category III, its calculation of Petitioner's Offense Level differed. First, based upon the weight of the Narcotics involved, Probation began with a base offense level of 38 points. It agreed with the two-point firearms enhancement estimated by the Government. However, it also added a two-point "stash house" enhancement and a two-point "supervisor role" enhancement to its calculation before downwardly adjusting its calculation by three points for acceptance of responsibility; Probations' resulting Total Offense level was 41 points. Hence, with a Criminal Category of III and Total Offense Level of 41, the applicable Guideline range of imprisonment was 360-months-to-life. (See PSR ¶¶23-34, 84.) However, in consideration of Petitioner's difficult formative years and to avoid unwarranted disparities with co-defendants, Probation recommended a below-Guidelines sentence of 240 months' imprisonment. (See Prob. Dep't Recommend., ECF No. 200-1 (sealed), at 3.)

    B.   The Sentencing Memos

        In Petitioner's Sentencing Memo, defense counsel objected to Probation's calculation of Petitioner's Total Offense

Level.  (See Def.'s Sent'g Memo, ECF No. 217 (redacted); unredacted version on file with the Court.)  In particular, Petitioner objected to the "supervisor role" enhancement, arguing he "took all direction from his son, James Sosa, the organizer of th[e] conspiracy" and "did not make any individualized decisions in furtherance of th[e] conspiracy".  (Id. at (unnumbered) 3.)  As such, a sentence within the Guidelines range was "significantly more severe than justice requires".  (Id.)  Counsel sought the Court's "compassion and mercy" and advocated for a non-Guideline sentence of 120 months' imprisonment.  (Id. at (unnumbered) 11.) Petitioner's Sentencing Memo was accompanied by three letters of support.

Conversely, although also seeking a non-Guidelines sentence, in its Sentencing Memo, the Government requested a sentence of 15 years' (i.e., 180-months) imprisonment.  (See ECF No. 209 at 1, 10.)  It acknowledged the Plea Agreement estimate of Petitioner's Offense Level did not include the "stash house" enhancement or the "supervisor role" enhancement.  (See id. at 2.) But, the Government agreed with Probation's calculations, especially as to the "supervisor role" enhancement.  (See id. at 3.)  Indeed, it asserted its investigation revealed Petitioner "was one of the main participants in a sprawling multi-state narcotics conspiracy", participating "in every facet of this conspiracy, including the purchase, transport storage and

distribution of narcotics, money and firearms."[8]    (Id.)
Nonetheless, "because these two enhancements were not included in
the [P]lea [A]greement between the parties, the [G]overnment
w[ould] only advocate for the Court to consider and sentence
[Petitioner] based on the Guideline range contemplated in the
[P]lea [A]greement of 210-262 months' incarceration." (Id.)

    The Government then advanced several arguments in
support of the applicable Section 3553(a) sentencing factors. (See
id. at 3-10.)   In particular, it pressed the seriousness of
Petitioner's drug-distribution-conspiracy offense, highlighting:
the scope of Petitioner's involvement with the sale of Narcotics;
Petitioner's possession of firearms to protect his drug ventures;
and, the inclusion of fentanyl in the Narcotics Petitioner sold.
(See id. at 3-8.)   In sum, the Government argued:   "Drug
trafficking ruins communities, feeds addictions, damages lives,
and invites violence." (Id. at 8.)   As to Petitioner's history
and characteristics, the Government underscored: since he was
19-years-old, Petitioner "has continuously had contact with the
criminal justice system", i.e., for 30 years; and, "most

_____

[8]  By way of examples, the Government asserted Petitioner: drove
cash on numerous occasions from Suffolk County to California for
the purchase of Narcotics; drove purchased Narcotics back to Long
Island; received mailed packages of Narcotics at his home in
Suffolk County; enlisted others to help transport large quantities
of Narcotics cross-country; and, once obtained, personally sold
Narcotics to other local, large-scale drug dealers. (Id. at 1-2.)

egregiously, [Petitioner's] criminal conduct continued while he was out on bail on his state case", continuing "selling kilograms of drugs." (Id.)

Further, in addition to addressing respect for the law, providing just punishment, and deterrence considerations (see id. at 9), the Government expounded upon the need to avoid unwarranted sentencing disparities. (See id. at 9-10.) In doing so, it called attention to the sentences the Court imposed upon several of Petitioner's co-defendants given each co-defendant's role in the drug-distribution-conspiracy and respective culpability. For example, co-defendants Cyntje and Maxwell engaged in lesser culpable activities, and each received a 72-month-incarceration sentence. By comparison, co-defendant Wiggins, whose involvement in the drug-distribution-conspiracy "is the most similarly situated to [Petitioner]", having "a lengthy criminal history and repeatedly distributed large quantities of drugs", received a 15-year-imprisonment sentence. (Id. at 10.) But, according to the Government, Petitioner "had a greater role in the conspiracy and [wa]s more culpable than Wiggins." (Id.) Given these comparators, the Government maintained a below-Guidelines, 15-year-imprisonment sentence for Petitioner would be sufficient, but not greater than necessary to serve the goals of the Section 3553(a) sentencing factors. (See id.)

C.   <u>The Sentencing Hearing</u>

On February 5, 2024, the parties appeared for Petitioner's sentencing.  Like the Court did at his change-of-plea hearing, this Court confirmed Petitioner was clear-headed and understood what was to transpire.  (Sent'g Hr'g Tr. at 3:18-4:1.) Similarly, this Court asked Petitioner whether he was satisfied with the services of his counsel; Petitioner stated he was.  (<u>See</u> <u>id.</u> at 4:2-4.)

The Court proceeded to address the Guidelines calculations.  Acknowledging the inaccuracy of its calculations, the Government asked the Court to adopt those of Probation with one modification, <u>i.e.</u>, adjusting Petitioner's Base Offense Level to 36 points.  (<u>See</u> <u>id.</u> at 6.)  In addition, as to the "supervisor role" enhancement, the Government clarified its position was not that Petitioner was a "main leader", but "[h]e was in a supervisory managerial capacity" having been heavily involved in all aspects of the drug-distribution-conspiracy.  (<u>Id.</u> at 6-7.)  Petitioner's counsel objected to the "supervisor role" enhancement, arguing Petitioner's actions taken in furtherance of the conspiracy were at the direction of his son, who was its leader.  (<u>See</u> <u>id.</u> at 8.) Ultimately, this Court adopted the Guidelines delineated in the PSR, with the base-offense-level modification requested by the Government.  (<u>See</u> <u>id.</u>; <u>see also</u> Statement of Reasons, ECF No. 221 (sealed), at §§ III, VIII.)

This Court also informed Petitioner it had reviewed the PSR, his counsel's Sentencing Memo, the letters of support from family and friends, and the Government's Sentencing Memo. (See id. at 5.) Further, it heard from both defense counsel and the Government regarding their respective positions on the sentence to be imposed. In addition to the arguments raised by defense counsel in his Sentencing Memo, counsel also: advocated for leniency in sentencing based upon Petitioner having been housed in MDC Brooklyn for approximately two-and-one-half years prior to sentencing (see id. at 10-11); initially sought some parity in sentencing with co-defendant Wiggins, who counsel argued was similarly situated to Petitioner (see id. at 11); but, proceeded to seek a lower imprisonment sentence than Wiggins' 15 years, since, contrary to Wiggins, Petitioner did not attempt to tamper with a case witness and proffered cooperation with law enforcement (see id. at 12). Additionally, Petitioner addressed the Court. (See id. at 16-18.)

After careful consideration of the Section 3553(a) sentencing factors, this Court imposed a substantially below-Guidelines sentence of 180 months' imprisonment on Count One, which sentence the Government requested, and which was below Probation's 240-month recommendation. (See id. at 25; cf. id. at 24 (discussing Probation's recommendation).) Petitioner was also sentenced to five years' supervised release. (See id.) On

February 7, 2024, the Court entered judgment on Petitioner's conviction. (See ECF No. 220.)

DISCUSSION

I.   Applicable Law

    A.   The Section 2255 Standard Generally

    "The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law." Harrington v. Richter, 562 U.S. 86, 91 (2011). To obtain relief under Section 2255, a petitioner must show "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); see also United States v. Hoskins, 905 F.3d 97, 102 (2d Cir. 2018). Therefore, a collateral attack on a conviction or sentence is available "for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995) (quoting Hill v. United States, 368 U.S. 424, 428 (1962)); accord Cuoco v. United States, 208 F.3d 27, 30 (2d Cir. 2000); Rodriguez v. United States, No. 11-CV-2957, 2013

15

WL 6171618, at *3 (S.D.N.Y. Nov. 25, 2013), <u>aff'd</u>, 679 F. App'x 41 (2d Cir. Feb. 15, 2017).

When determining whether to grant relief, Second Circuit precedent "instructs that § 2255 review is 'narrowly limited in order to preserve the finality of criminal sentences and to effect the efficient allocation of judicial resources.'" <u>Hoskins</u>, 905 F.3d at 102 (quoting <u>Graziano v. United States</u>, 83 F.3d 587, 590 (2d Cir. 1996) (internal quotation marks omitted)); <u>see also</u> <u>Yick Man Mui v. United States</u>, 614 F.3d 50, 53 (2d Cir. 2010) ("Because collateral challenges are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." (internal quotation marks omitted)).  Additionally, in advancing a federal habeas corpus writ, the petitioner has the burden of proving his claims by a preponderance of the evidence.  <u>See</u> <u>Negron v. United States</u>, 520 F. Supp. 3d 296, 301 (E.D.N.Y. 2021) ("A § 2255 movant bears the burden to prove the claims in his § 2255 motion by a preponderance of the evidence." (citing <u>Triana v. United States</u>, 205 F.3d 36, 40 (2d Cir. 2000) (further citation

omitted)); accord Skaftouros v. United States, 667 F.3d 144, 158 (2d Cir. 2011).

B.   Ineffective-Assistance-of-Counsel Claims

> Claims of ineffective assistance of counsel are evaluated under the framework set forth in Strickland v. Washington, 466 U.S. 668 (1984). "First, the [petitioner] must show that counsel's performance was deficient." Strickland, 466 U.S. at 687. "Second, the [petitioner] must show that the deficient performance prejudiced the defense." Id.

Herring v. United States, No. 20-CV-9752, 2025 WL 3124678, at *4 (S.D.N.Y. Nov. 6, 2025); see also Cabral v. United States, No. 12-CR-0336, 2022 WL 307809, at *6 (E.D.N.Y. Feb. 2, 2022) (stating, "to prevail on his ineffective assistance of counsel claim, [petitioner] must '(1) demonstrate that his counsel's performance 'fell below an objective standard of reasonableness' in light of 'prevailing professional norms,'' and (2) ''affirmatively prove prejudice' arising from counsel's allegedly deficient representation'" (quoting United States v. Cohen, 427 F.3d 164, 167 (2d Cir. 2005); further citation omitted)).  As to the first, "performance" prong, a petitioner must: (a) "show that his counsel's performance fell below an objective standard of reasonableness under prevailing professional norms", with the court's review being highly deferential and indulging in a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance"; and (b) "overcome the

presumption that, under the circumstances, the challenged action might be considered sound trial strategy." United States v. Peterson, 896 F. Supp. 2d 305, 312 (S.D.N.Y. 2012) (quoting Strickland; internal quotation marks omitted). As to the second, "prejudice" prong, a petitioner "must demonstrate that, 'but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Id. (quoting Stickland). In that vein, a petitioner is required to show "[t]he likelihood of a different result [was] substantial, not just conceivable." Harrington, 562 U.S. at 111-12 (internal quotation marks omitted). And, "[i]n assessing prejudice, courts 'must consider the totality of the evidence before the judge or jury.'" Berghuis v. Thompkins, 560 U.S. 370, 389 (2010) (quoting Strickland, 466 U.S. at 695).

Continuing,

> [i]n the specific context of guilty pleas, Strickland's prejudice component "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." Hill, 474 U.S. at 59. One way to satisfy the "prejudice" requirement is to "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id.; see also Kovacs v. United States, 744 F.3d 44, 51-52 (2d Cir. 2014) (discussing various ways that prejudice may be shown in the guilty plea context, including a forgone decision to proceed to trial or a more advantageous plea offer). In addition, a petitioner may show prejudice by demonstrating that he would have received and accepted a guilty plea with a lower sentence but for counsel's errors. See

> Missouri v. Frye, 566 U.S. 134, 147 (2012);
> see also Lafler v. Cooper, 566 U.S. 156, 174
> (2012) (finding prejudice where the defendant
> showed that, but for counsel's deficient
> performance, there was a reasonable
> probability that the court would have accepted
> a guilty plea with a sentence less than a third
> of the length of the sentence he received
> after trial). Thus, with respect to plea
> bargaining, a defendant must show that "the
> outcome of the plea process would have been
> different with competent advice." Lafler, 566
> U.S. at 163.

United States v. Derounian, No. 16-CR-0412, 2024 WL 3623522, at

*14 (E.D.N.Y. Aug. 1, 2024). The Derounian Court also noted, as

to a petitioner's purported insistence on proceeding to trial, a

"petitioner must convince the court that a decision to reject the

plea bargain would have been rational under the circumstances."

Id. at *14 n.17 (quoting Padilla v. Kentucky, 559 U.S. 356, 372

(2010)). And, of significance, the Second Circuit "requires some

objective evidence other than [petitioner's] assertions to

establish prejudice." Id. (quoting Pham v. United States, 317

F.3d 178, 182 (2d Cir. 2003); further citation omitted).

"Because both parts of the Strickland test must be

satisfied for a petitioner to establish ineffective assistance of

counsel, failure to satisfy one part of the test frees a district

court from assessing whether the petitioner satisfied the other

part of the test." Velez v. United States, No. 05-CV-0537, 2006

WL 1952191, at *4 (S.D.N.Y. July 10, 2006) (citing Strickland, 466

U.S. at 699 (instructing a court need not "address both components

of the [two-part *Strickland*] inquiry if the defendant makes an insufficient showing on one")); *see also* Derounian, 2024 WL 3623522, at *12 ("A court must reject a petitioner's ineffective assistance of counsel claim if it fails to meet either prong." (citing Gonzalez v. United States, 722 F.3d 118, 130 (2d Cir. 2013)).

C.   Consideration of Petitioner's *Pro Se* Status

"When a defendant attacking his . . . sentence is proceeding pro se, the court must 'read [the defendant's] submissions broadly so as to determine whether they raise any colorable legal claims.'"   United States v. Williams, No. 20-CR-0404, 2025 WL 660213, at *4 (E.D.N.Y. Feb. 28, 2025) (quoting United States v. Parisi, 529 F.3d 134, 139 (2d Cir. 2008); further citation omitted).   Hence, since Petitioner's submissions were filed pro se, the Court has liberally construed them "'to raise the strongest arguments that they suggest.'"   Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)).   Nonetheless, this does not excuse Petitioner "'from comply[ing] with relevant rules of procedural and substantive law.'"   Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (quoting Birl v. Estelle, 660 F.2d 592, 593 (5th Cir. 1981)).   Furthermore, "if it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the [district

court] must dismiss the [habeas] motion." Seabrook v. United States, No. 22-841, 2023 WL 7489961, at *2 (2d Cir. Nov. 13, 2023) (quoting Puglisi v. United States, 586 F.3d 209, 213 (2d Cir. 2009)).

## II.  Application

### A.  The Petition

#### 1.  Petitioner's Position

In seeking to have his sentence vacated, Petitioner raises four claims:  (a) an assertion that his plea was not taken knowingly or intelligently (see Petition at 5); (b) the purported incorrect calculation of drug quantities (see id. at 6); (c) a claim Petitioner did not receive a copy of either his PSR or the Sentencing Memorandum his counsel submitted prior to sentencing (see id. at 8); and (d) Petitioner's counsel allegedly failed to advocate on behalf of Petitioner (see id. at 9).  As an initial observation, at best, Petitioner's claims are conclusory; they are bald allegations, unsupported by specific facts and/or incredible given the record before the Court.  Further, the bare-boned Petition is not supported by any memorandum of law.  Since it is plain from the Petition and the record of prior proceedings in this case involving this Petitioner that Petitioner is not entitled to habeas relief, this conflation of observations supports the conclusion that a summary dismissal is warranted.  See Seabrook,

2023 WL 7489961, at *2.  Nonetheless, the Court proceeds with a thorough assessment of the Petition.

### 2.  The Government's Position

The Government's views the four grounds for habeas relief presented by Petitioner as, in essence, ineffective-assistance-of-counsel claims.  (See Opp'n at 6.) According to the Government:

> First, counsel allegedly never showed the defendant the plea agreement prior to the plea and told the defendant that if he accepted the offer, he "would qualify for the First Step Act because [of] the removal of the gun charge."  Second, counsel failed to notice that the drug weight guidelines were allegedly incorrect.  Third, counsel allegedly never showed the defendant his PSR.  And fourth, counsel allegedly never challenged certain of the enhancements in the PSR.

(Id.)  It maintains each basis Petitioner puts forth in support of habeas relief is meritless, warranting its summary denial.  (See id.)  For the reasons elucidated herein, the Court agrees.

### B.  The Court's Ruling

As a threshold matter, the Court has determined a hearing on the Petition is not required in this instance; on the record presented, Petitioner has not made out a prima facie case that he is entitled to habeas relief.  See generally Puglisi v. United States, 586 F.3d 209 (2d Cir. 2009); see also 28 U.S.C. § 2255(b); Ulbricht v. United States, No. 14-CR-0068, 2022 WL 2116685, at *5 (S.D.N.Y. June 13, 2022) (recognizing "a decision without a

testimonial hearing is proper where [among other situations,] the allegations of the motion, accepted as true, would not entitle the petitioner to relief") (citation modified). To begin, Petitioner never stated that, but for his defense counsel's purported ineffective assistance, Petitioner would not have pled guilty; nor is there any affidavit from Petitioner to that effect. (See Petition, in toto); see also Puglisi, 586 F.3d at 215-16. Indeed, Petitioner has not supported any of his grounds for habeas relief with an affidavit. (See id.); see also Puglisi, 586 F.3d at 216-17. Further, Petitioner fails to support his ineffective-assistance claims with any other objective evidence. (See id.); Puglisi, 586 F.3d at 216. Where it is apparent a petitioner has not presented a colorable basis for relief and the record conclusively shows the petitioner is not entitled to habeas relief, a court may dismiss the habeas petition without an evidentiary hearing. Cf. Puglisi, 586 F.3d at 213; see also Seabrook, 2023 WL 7489961, at *2 (affirming dismissal of habeas petition without hearing where petition was without merit). Accordingly, given its review of the Petition and the record, this Court declines to hold an evidentiary hearing and proceeds to rule upon the parties' submissions.

For each of the four grounds Petitioner puts forth in support of his Section 2255 habeas Petition, he is unable to satisfy the requisite prejudice prong. That is because, given the

specific facts of this case, Petitioner is unable to convince the Court that a decision to have rejected his Plea Agreement would have been rational under the circumstances. See Derouian, 2024 WL 3623522, at *14 and n.17. Indeed, under the facts of this case, Petitioner's various claims that he would have rejected the Plea Agreement but for advice of counsel—regardless of the different ways he presents those claims--defy credulity. Rather, as the Government aptly explains:

> the plea agreement that counsel secured for [Petitioner] allowed [Petitioner] to plead guilty to an offense with a ten-year [(i.e., 120 months)] mandatory minimum and a cap on the government's recommendation of 15 years' imprisonment. Counsel's negotiation also prompted the government to dismiss the second count of the indictment, using a firearm in furtherance of drug trafficking, as covered by the plea. This second charged crime would have required [Petitioner] to be sentenced to an additional five years' incarceration to run consecutive to his drug conviction. This was an extremely favorable disposition for [Petitioner], considering that the parties, in the plea agreement, jointly believed the guideline range, after acceptance of responsibility, to be 210 – 262 months imprisonment. Had [Petitioner] rejected the plea agreement and gone to trial, which he now contends he wants, [Petitioner] would have been calculated as a base offense level of 44, and his guideline range of imprisonment would have been life.

> [Remainder of page intentionally left blank.]

(Opp'n at 9[9] (emphasis added).)  Moreover, in light of the extensive

evidence the Government had against Petitioner--e.g., surveillance

video of Petitioner transporting Narcotics; GPS monitoring of

Petitioner's vehicle travelling to California; postal records

showing Narcotics being delivered; wiretap communications; the

recovery of huge quantities of cash, drugs and guns from

Petitioner's home and the homes of his co-conspirators; and

eyewitness testimony of Petitioner's involvement in the subject

conspiracy (see Plea Hr'g Tr. at 18)--Petitioner's contention he

would have fared better if he proceeded to trial is patently

unavailing.  Such a bald claim is simply irrational; it certainly

does not warrant habeas relief under any of the four grounds

Petitioner asserts.

> Likewise, other than his bald assertions,
> Petitioner has failed to proffer any objective
> evidence demonstrating prejudice.  See
> Norville [v. United States], 151 F. Supp. 3d
> [329,] 336 [(S.D.N.Y. 2015)] (addressing
> prejudice prong of the Strickland test;
> instructing a petitioner must affirmatively
> prove prejudice by showing "there is a
> reasonable probability that, but for counsel's
> unprofessional errors, the result of the
> proceeding would have been different" and
> "some objective evidence other than
> [petitioner's] assertions is required to
> establish prejudice" (quoting Pham v. United
> States, 317 F.3d 178, 182 (2d Cir.2003))
> (citation modified).  In the absence of
> establishing prejudice, Petitioner's claim of
> ineffective-assistance-of-counsel [] fail[s].

[9] The Government advances this argument as to Ground One, but it
equally applies to all four grounds advanced by Petitioner.

<u>Hardy v. United States</u>, No. 17-CR-0372, 2026 WL 252003, at *9 (E.D.N.Y. Jan. 30, 2026). Even if that were not true, as explained below, because Petitioner is unable to establish the performance prong of the <u>Strickland</u> test as to each Ground he advances for habeas relief, his Petition would be denied nonetheless.

> 1. <u>As to Ground One:  The Plea Claim</u>

This Court has previously explained:

> To succeed on an ineffective assistance of counsel claim in the context of [a] guilty plea, "the petitioner must show that the plea agreement was not knowing and voluntary, because the advice he received from counsel was not within acceptable standards." <u>Parisi v. United States</u>, 529 F.3d 134, 138 (2d Cir. 2008) (internal quotation marks and citations omitted).  If a petitioner shows that he was subjected to objectively unreasonable representation, he must still show that he was prejudiced.  In other words, he must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985). <u>Crucially, "[a] defendant who pleads guilty unconditionally while represented by counsel may not assert independent claims relating to events occurring prior to the entry of the guilty plea.</u>" <u>United States v. Coffin</u>, 76 F.3d 494, 497 (2d Cir. 1996).

<u>Cabral</u>, 2022 WL 307809, at *6 (emphasis added).

Here, Petitioner argues his plea was not taken knowingly or intelligently because he never received documentation from his attorney regarding the Plea Agreement "until well after the fact." (Petition at 5.)  He also claims his counsel advised him that by

26

accepting the Government's plea offer, Petitioner would qualify for the First Step Act. (See id.) Both arguments are belied by the record.

First, as the transcript of his change-of-plea hearing makes abundantly clear, Petitioner's plea was made knowingly, intelligently, and voluntarily. (See Plea Hr'g Tr. 3-6; 11-14.) His plea-related colloquy with the Court, made under oath, confirms as much, including confirming he was familiar with the Plea Agreement, which both he and his counsel signed. (See id. at 10:7-11.) Petitioner's sworn statements made during his plea "carry a 'strong presumption of verity.'" Cabral, 2022 WL 307809, at *5 (quoting Blackledge, 431 U.S. at 74); see also Yushavyev v. United States, 532 F. Supp. 2d 455, 471 (E.D.N.Y. 2008) (quoting Blackledge). Thus, Petitioner's self-serving statements in his Petition, which are contradicted by his sworn statements at the change-of-plea hearing--as well as at the sentencing hearing-- fails to establish his counsel was deficient in his performance.

Second, it is unclear how the alleged non-receipt of a hard copy of his Plea Agreement had any affect on the knowing and intelligent entry of Petitioner's plea. Petitioner has not pointed to, nor is the Court aware of, any authority requiring a criminal defendant to have received a hard copy of a plea agreement prior to entering a plea. Cf. Florida v. Nixon, 543 U.S. 175, 187 (2004) ("An attorney . . . has a duty to consult with the client regarding

important decisions . . . ." (emphasis added)). Conversely and in any event, the record clearly established Petitioner's: familiarity with the Plea Agreement, having reviewed said Agreement with his attorney; and having executed the Agreement, as did his attorney. (See id. at 10:7-11; see also generally Standard Plea Form at 8.) Moreover, Petitioner had the opportunity to raise the alleged non-receipt of a hard copy of the Plea Agreement at his change-of-plea hearing, but he did not do so. (See Plea Hr'g Tr. 13:18-21 ("THE COURT: Do you have any questions at all that you want to ask me about the charge, your rights, or anything else relating to this matter? THE DEFENDANT: No, ma'am." (emphasis added)).) Therefore, any complaint on that basis lacks merit.

    In any event, even if Petitioner's tardy-receipt claim is true, i.e., he did not receive a copy of the Plea Agreement until November 11, 2023, approximately a year after his change-of-plea (see Petition at 5), Petitioner has failed to demonstrate how such alleged tardiness caused defense counsel's performance to fall outside the broad range of prevailing professional norms, thereby impeding Petitioner's right to effective assistance of counsel. And, Petitioner's November 2023 receipt of the Plea Agreement occurred before Petitioner's February 5, 2024 sentencing, during which hearing the Court--once more--inquired of Petitioner whether he was satisfied with defense counsel's representation and during which--once more--Petitioner

28

stated he was satisfied. The Court reiterates that such statements, made under oath, are afforded a strong presumption of truthfulness, which presumption Petitioner has woefully failed to overcome. See Hardy, 2026 WL 252003, at *9 (finding sworn statement made in open court carried strong presumption of truth; rejecting petitioner's ineffective-assistance-of-counsel claim where petitioner stated, at his sentencing hearing, he was satisfied with his defense counsel).

Finally, as to the branch of Petitioner's Ground One regarding his attorney's alleged advice regarding qualifying for First Step Act credit, upon the record presented, it is unavailing. As highlighted by the Government, in both the Standard Plea Form and at his change-of-plea hearing, Petitioner confirmed "that other than the agreement on the record, no one had made any promises that caused him to plead guilty, and no one had made him any promises as to what his sentence would be." (Opp'n at 9 (citing Standard Plea Form at 8; Plea Hr'g Tr. at 14).) Petitioner has failed to overcome the presumptive truthfulness of those representations made at his change-of-plea hearing. See, e.g., Oklu v. United States, No. 12-CR-0177, 2016 WL 1383530, at *3 (S.D.N.Y. Apr. 7, 2016) ("It is well-established that 'allegations a defendant makes in a Section 2255 petition cannot overcome his contrary statements under oath during a plea allocution, which must be given presumptive force of truth.'" (quoting Norville,

151 F. Supp. 3d at 336; further citation omitted) (citation modified).

At bottom, Petitioner has not shown: (a) any purported failure to provide him with documents regarding his Plea Agreement interfered with his knowing and intelligent entry of a guilty plea; and (b) how his counsel's First Step Act qualification advice rendered Petitioner's plea to be unknowing or unintelligent. Rather, upon the record presented, as to Ground One, there is an absence of any evidence of defense counsel's performance being constitutionally deficient assistance.

### 2. As to Ground Two: The Drug Quantity Claim

Petitioner baldly asserts the Probation Department improperly calculated his offense level, based upon the weight of drugs involved; as a result, the Probation Department assessed Petitioner's offense level too high, i.e., at an offense level of 36 rather than at offense level 30. (See Petition at 6.) As the Government acknowledges, Petitioner's "second claim is not an ineffective assistance of counsel claim." (Opp'n at 10.) Moreover, the Government argues Petitioner "waived his right to challenge the guideline calculation", which waiver was made knowingly, competently, and voluntarily. (Id.) The Court agrees with the Government on both points.

The Second Circuit instructs:

Waivers of the right to appeal a sentence are presumptively enforceable. <u>United States v. Gomez-Perez</u>, 215 F.3d 315, 319 (2d Cir.2000). "Knowing and voluntary appellate waivers included in plea agreements must be enforced because, if they are not, the covenant not to appeal becomes meaningless and would cease to have value as a bargaining chip in the hands of defendants." <u>United States v. Granik</u>, 386 F.3d 404, 412 (2d Cir.2004) (internal quotation marks omitted). As a result, we find waivers unenforceable only in very limited situations, "such as when the waiver was not made knowingly, voluntarily, and competently[;] when the sentence was imposed based on constitutionally impermissible factors, such as ethnic, racial or other prohibited biases[;] when the government breached the plea agreement[;] or when the sentencing court failed to enunciate any rationale for the defendant's sentence." <u>Gomez-Perez</u>, 215 F.3d at 319 (internal citations omitted).

<u>United States v. Arevalo</u>, 628 F.3d 93, 98 (2d Cir. 2010); <u>United States v. Kimmons</u>, No. 19-4374-CR, 2022 WL 2344088, at *1 (2d Cir. June 29, 2022) (summary order) (relying upon <u>Arevalo</u>, dismissing appeal based upon defendant's waiver of right to appeal contained in his plea agreement).

Here, Petitioner's Plea Agreement contained an appeal waiver, which stated in relevant part that Petitioner agreed not to "otherwise challenge, by petition pursuant to 28 U.S.C. § 2255 or any other provision, the conviction or sentence in the event that the Court imposes a term of imprisonment of 293 months or below." (Plea Agmt. ¶4.) As established, Petitioner was sentenced to 180 months' imprisonment, thereby triggering the applicability

of the appeal waiver, which included precluding a challenge pursuant to Section 2255. (See supra at 14.) And, as discussed, Petitioner knowingly and voluntarily entered a guilty plea in accordance with the Plea Agreement. (See supra at 6-8.) In ensuring that was the case, at his change-of-plea hearing, the Court specifically raised the Plea Agreement, including the inclusion of the appeal waiver, and confirmed Petitioner's familiarity with said Agreement and that it was signed by both Petitioner and his counsel. (See Plea Hr'g Tr. 9:24-10:11.) Therefore, any assertion the appeal waiver provision was not agreed to knowingly and voluntarily is patently unavailing. Further, Petitioner has not challenged the validity of his appeals waiver on any of the other prescribed grounds identified by the Second Circuit for finding an appeals waiver to be unenforceable. See Kimmons, 2022 WL 2344088, at *1 (quoting Arevalo, 628 F.3d at 98). "[H]is appellate waiver is thus enforceable, barring the instant claim." Id.

       3.   As to Ground Three:  The Receipt-of-Copies Claim

Petitioner makes unsubstantiated claims that his counsel did not provide Petitioner with copies of the PSR or counsel's Sentencing Memorandum prior to Petitioner's sentencing and "never told [Petitioner] about the leadership enhancements or the level 41 calculation." (Petition at 8.) He also half-heartedly states counsel "didn't really try to argue these issues either." The

32

Government counters that Petitioner's "claim that counsel did not permit him to review the PSR or sentencing memorandum prior to sentencing is belied by the record and meritless." (Opp'n at 12.) Once more, the Court concurs with the Government.

Assuming, _arguendo_, Petitioner did not receive hard copies of the PSR or his counsel's Sentencing Memo before Petitioner's sentencing, Petitioner has failed to establish such purported inaction arises to the level of unconstitutional assistance of counsel. As previously stated, Petitioner has not pointed to, nor is this Court aware of, any requirement that a criminal defendant receive a hard copy of either document before being sentenced. Instead, the crucial issue is whether Petitioner's counsel reviewed the PSR with Petitioner; there is nothing in the record establishing that did not occur. Moreover, the Court informed Petitioner he had the right and could "speak to the Court directly" regarding issues he believed the Court should consider before he was sentenced. (Sent'g Hr'g Tr. 4:9-13.) Yet, as the Government correctly states: "At no point did [Petitioner], who was given the opportunity to address the [C]ourt, state that he had not seen the PSR." (Opp'n at 12.) Moreover, when specifically asked whether he was satisfied with the services of his attorney, Petitioner stated he was. (_See_ Sent'g Hr'g Tr. 4:2-4.) Petitioner's "in-court statements are afforded a 'strong presumption of verity,'" _Delutro v. United States_, No. 11-CV-2755,

2014 WL 4639198, at *8 (E.D.N.Y. Sept. 16, 2014) (quoting Gonzalez, 722 F.3d at 130-31), "and create a 'formidable barrier' to habeas relief." Id. (quoting Blackledge, 431 U.S. at 74). Weighing Petitioner's sworn attestation that he was satisfied with his attorney's services against his current bald assertions to the contrary, the Court finds Petitioner's claims presented in Ground Three meritless. See, e.g., Gist v. United States, No. 16-CR-0656, 2021 WL 3774289, at *25 (S.D.N.Y. Aug. 24, 2021) ("The Supreme Court has long held that '[s]olemn declarations in open court carry a strong presumption of verity. T[hus, t]he subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal . . . .'" (quoting Blackledge, 431 U.S. at 74 (citing Machibroda v. United States, 368 U.S. 487, 495-96 (1962))). Hence, habeas relief is denied on this basis.

### 4. As to Ground Four: The Failure-to-Advocate Claim

Finally, Petitioner complains his counsel did not advocate on his behalf and "never made any of the objections [Petitioner] requested." (Petition at 9.) The Government responds that this claim is meritless, asserting "counsel properly objected to several enhancements, including the leadership enhancement", and such advocacy resulted in the Court "accepting the guideline range in the plea agreement, which did not include the leadership enhancement or stash house enhancement." (Opp'n at 12.) Moreover, in his Sentencing Memo, defense counsel: raised "objections to the

Guidelines range set forth in the PSR" (id. (citing Def.'s Sent'g Memo at 3-4)); "put forth arguments to mitigate [Petitioner's] instant criminal conduct"; and, advanced mitigation arguments, "emphasiz[ing] several points, including [Petitioner's] acceptance of responsibility" and relevant personal history. (Id. (citing Def.'s Sent'g Memo at 8-9).)

Given the record before the Court, Petitioner's hindsight-based dissatisfaction is unavailing to establish ineffective assistance of counsel warranting habeas relief. Contrary to Petitioner's current, self-serving contentions, his counsel did advocate on Petitioner's behalf in a manner that fell well within the broad range of competent representation found to be constitutional. The Court's review of defense counsel's Sentencing Memo confirms the arguments advanced by the Government here. (See Def.'s Sent'g Memo, in toto.)

And, prior to imposing its sentence, this Court informed the parties it had reviewed, among other things, defense counsel's Sentencing Memo. (See Sent'g Hr'g Tr. at 5:10-12.) Hence, there was no need to reiterate arguments raised therein. Nonetheless, this Court also heard from defense counsel who: joined in the Government's request that the Court apply the Guidelines range agreed to by the parties in the Plea Agreement; advocated for a rejection of the "supervisor role" enhancement; requested the Court take into consideration the conditions-of-confinement which

Petitioner endured while housed at MDB Brooklyn prior to his sentencing; and, highlighted the need to avoid sentencing disparity with Petitioner's co-defendants. (See Sent' Hr'g Tr. at 8, 11-12.) Given this advocacy and the resulting substantially below-Guidelines sentence of 180 months' imprisonment, Petitioner's claim rings hallow. He certainly cannot "show that his counsel's performance fell below an objective standard of reasonableness under prevailing professional norms", especially in light of the Court's required highly deferential review of that performance and defense counsel's entitlement to a "strong presumption" that his representation fell within the wide range of reasonable professional assistance acceptable for constitutional purposes. Peterson, 896 F. Supp. 2d at 312; see also, e.g., Herring, 2025 WL 3124678, at *4; see also Norville, 151 F. Supp. 3d at 336 ("An attorney's performance is given a strong presumption of effectiveness, as courts recognize a 'wide range of professional assistance.'" (quoting Strickland, 466 at 689)). Indeed, defense counsel sought leniency for Petitioner, and that is exactly what he received from this Court. Therefore, the Court finds Petitioner's Ground Four to be baseless.

-*-*-*-

To the extent not explicitly stated herein, the Court has considered Petitioner's remaining arguments and finds them to be without merit. At bottom, given the record of this case, and

36

having considered the relevant case law, the Court finds Petitioner is unable to satisfy the applicable Stickland test and is otherwise precluded from advancing his arguments by the enforceable appeal waiver in his Plea Agreement. In sum, habeas relief is not warranted.

CONCLUSION

Accordingly, for the foregoing reasons, **IT IS HEREBY ORDERED** that Petitioner's Petition seeking to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (ECF No. 238) is **DENIED** in its entirety;

**IT IS FURTHER ORDERED**, because there can be no debate among reasonable jurists that Petitioner is not entitled to relief, the Court does not issue a Certificate of Appealability. See 28 U.S.C. § 2253(c); see also Middleton v. Att'ys Gen., 396 F.3d 207, 209 (2d Cir. 2005); Baker v. United States, No. 97-CR-0877, 2022 WL 2803556, at *2 (E.D.N.Y. July 18, 2022) ("On the whole, Petitioner has not made a substantial showing of the denial of his constitutional rights, and the [court's decision] thus does not warrant a Certificate of Appealability."); and

**IT IS FURTHER ORDERED**, the Clerk of the Court is directed to mail a copy of this Memorandum and Order to Petitioner at his address of record, including the notation "LEGAL MAIL" on the

mailing envelope, and mark as "CLOSED" the corresponding civil case, Case No. 24-CV-5918.

SO ORDERED.
/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:   February 18, 2026
         Central Islip, New York